## DENIVELLE v. MacGRUER & SIMPSON et al.

(Circuit Court of Appeals, Ninth Circuit. March 2, 1925. Rehearing Denied April 6, 1925.)

No. 4269.

1. Patents ⬥328—Denivelle, 1,212,331, for artificial travertin, held void for prior public use by the patentee.

The Denivelle patent, No. 1,212,331, for process of making artificial travertin and the resulting product, *held* void for the reason that more than two years prior to the application for the patent the patentee had placed the process and product of the invention on sale, and had sold both to the Pennsylvania Terminal & Railroad Company for a profit.

2. Patents ⬥75—Whether prior use is experimental depends on its principal purpose.

Where a patentee, more than two years before his application, used the process and product which were the basis of the patent in the construction of a large building on a bid made in competition with others, and received a large sum in payment therefor, the experimental character of the use, if any, was merely incidental, and not the substantial purpose of the transaction.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California; George M. Bourquin, Judge.

Suit in equity by Paul E. Denivelle against MacGruer & Simpson, a partnership, George Smith MacGruer, and Robert Morton Simpson. Decree for defendants, and complainant appeals. Affirmed.

Chas. E. Townsend and Wm. A. Loftus, both of San Francisco, Cal., for appellant.

T. Hart Anderson and Munn, Anderson & Munn, all of New York City, for appellees.

Before GILBERT, HUNT, and MORROW, Circuit Judges.

MORROW, Circuit Judge. Appellant brought suit in the court below for infringement of his patent, No. 1,212,331, issued January 16, 1917, application filed October 20, 1915, for the manufacture of artificial stone structures simulating travertin stone. This same patent was in issue in the case of Los Angeles Lime Company and Paul E. Denivelle v. C. L. Nye, and Same Plaintiffs v. E. Ceriat, 270 F. 155, where the lower court held the patent invalid, and was reversed by this court on appeal. In both of these prior cases the appeals brought to this court the questions of the novelty and utility of the process and product described and claimed in the patent in suit. After careful examination and consideration of the evidence, this court held that both the novelty and utility of the process and product had been sustained, that the patent was valid, and that the defendant had infringed.

[1] It was contended in behalf of the defendants in these prior cases, as in the present case, that both process and product had been in public use for more than two years before the application was made for the patent on October 20, 1915, and that the invention had been abandoned. The evidence in support of this contention related mainly to the use of the imitation travertin, in accordance with plaintiff's patent in the construction of the Pennsylvania Railroad Station in New York City in 1909 and 1910. The plaintiff testified that the work on that structure was experimental, and accordingly this court held that neither the process nor the product had been in public use or on sale in this country within the meaning of the statute for more than two years prior to the application for the patent.

Defendants, in their amended answers in the present case, admitted the prior adjudication of the patent in suit in this court; but alleged that the defense introduced in those cases was incomplete and that material evidence, affecting the validity of the patent, was not known to the defendants at the time said cases were tried, or, if known, was omitted. It was further alleged that upon such new evidence discovered by defendants, and not before this court in the prior cases taken in connection with the evidence in the prior cases, would show, beyond a reasonable doubt, that the patent was invalid and of no force or effect.

In this behalf it was alleged that the patent in suit was void, invalid, and of no force and effect, for the reason that, more than two years before the application therefor was filed, plaintiff put into public use and on sale in the United States the alleged new process therein shown, described, and claimed, and constructed and installed imitation

travertin made in accordance with that process, and that, if the plaintiff was ever the first and original inventor of the alleged process and product shown, described, and claimed in the patent, which the defendants denied, he abandoned the same to the public before he filed the application for the patent, by making an extensive public use thereof in the United States, and permitting others to extensively use same in the United States, for more than two years before he filed his application, without asserting any claim that the same constituted an invention, or any exclusive rights in and about the same.

Further answering, the defendants alleged that, at the time of filing the application for the patent, it contained no claims for a cementitious structure, or the product of the alleged new process, and that claims 9 and 10, or any similar claims, were not contained in the said application when first filed, but such claims were introduced by amendment after the case was filed, without any supplemental oath, and are not covered by the original oath. Wherefore it is alleged said claims constitute new matter, and are invalid, void, and of no force and effect.

This suit was brought July 16, 1923, and a restraining order pendente lite was issued by the late Judge Van Fleet. The case was tried before Judge Bourquin, who dissolved the preliminary injunction and decreed that plaintiff's patent was invalid as to claims 1, 2, 5, 9, and 10 (the claims charged to be infringed), by reason of public use and sale more than two years before the application for the patent was filed, and that claims 9 and 10 were void by reason of the absence of the supplemental oath. The character and scope of the invention is disclosed in the following claims:

Claim I.—A process for the manufacture of striated artificial stone structures which comprises (1) depositing upon a prepared surface of desired form a series of narrow layers of plastic material; (2) depositing upon said layers and upon the exposed surfaces therebetween a suitable material of such texture and consistency as will leave numerous small portions of said exposed surfaces out of contact with said material; (3) binding together said layers and said material with a fluid cement; (4) and allowing the mass to set.

Claim II.—A process for the manufacture of striated artificial stone structures which comprises: (1) Same as first claim, with the addition of "of a certain color" to layers of plastic material; (2) depositing upon said layers and upon the exposed surfaces therebetween a suitable material of a different color, and of such texture and consistency as will leave numerous small portions of said exposed surfaces out of contact with said material. The remaining elements of this claim are the same as in the first claim.

Claim V.—A process for the manufacture of striated artificial stone structures, which consists in (1) preparing a mold of suitable outline with an isolator; (2) forming veins of plastic material over this prepared surface; (3) depositing loose, lumpy material over the veining to provide pockets; (4) binding the pocket-forming material with the veining material; (5) and leaving certain pockets exposed on the surface adjacent to the mold surface.

Claim IX.—A cementitious structure, suitable for decorative purposes, comprising (1) a mass of cementitious material, at least one surface of which is shaped and striated and formed with small irregularly spaced depressions; (2) the striæ constituting the exposed portions of shallow inlays of uniformly colored cement.

Claim X.—A cementitious combination for decorative use, such as a finish for exterior or interior building walls and ceilings, which combination is (1) formed of differently toned thin layers or strata; (2) the said layers only partly connected one to the other, in such manner as to leave serrated voids in stratified formation between said layers; (3) said layers and voids existing only adjacent to the surface, but giving an appearance, when erected, of extending through the depth of the mass; (4) the resulting decorative surface simulating that of a natural stone structure of sedimentary origin.

The controlling question on this appeal is whether, upon the evidence now before the court, the art described in the patent as an invention and the product of such art had been in public use or had been on sale for more than two years before the plaintiff made application for the patent therefor on October 20, 1915 (sections 4886 and 4920, Rev. Stat., as amended; sections 9430 and 9466, Comp. Stat.). The evidence upon this question relates mainly to the use of imitation travertin, in accordance with plaintiff's patent, in the construction of the Pennsylvania Railroad Station at New York City in 1909 and 1910. The plaintiff, on his motion for a preliminary injunction, said among other things: "The patent in suit is for the manufacture of artificial stone in simulation of Roman travertin."

The imitation travertin stone constructed

and installed by the plaintiff in the Pennsylvania Station in New York City is admitted by the plaintiff to be the invention described in his patent. He says in his affidavit: "The process is well defined in claims 1, 2, and 5 of the patent, * * * along with claims 9 and 10, covering the product produced by the practice of the process."

After some details descriptive of the process, the plaintiff says: "The intrinsic merit of the invention has found expression in a large practical way in its extensive use by affiant in the monumental structure of the Pennsylvania Railroad Station in New York City and the wall surfacing of the buildings of the Panama-Pacific International Exposition in San Francisco; this work in each instance being under the personal supervision of affiant, the patentee."

Plaintiff says, further, "that there is no known method of commercially producing artificial travertin, except by plaintiff's patented method." In his affidavit, plaintiff refers to the application of the process in many other monumental buildings, concluding with a recital of certain negotiations carried on between the plaintiff and defendants for the use by the defendants of the invention in the construction of the Biltmore Hotel in Los Angeles, the failure of such negotiations, and the use by the defendants of the invention in that building constituting the alleged infringement of plaintiff's patent.

It appears from the evidence that McKim, Mead & White were the architects who designed and supervised the construction of the Pennsylvania Station in New York City, and that the George A. Fuller Construction Company was the general contractor for the construction of the building; that on July 20, 1908, plaintiff's firm, Hammerstein & Denivelle, submitted proposals in writing to George A. Fuller Company, the general contractor, to execute, furnish, and erect complete the entire work in the Pennsylvania Terminal Building in New York City, and shown and specified according to memorandum specification. The work proposed by Hammerstein & Denivelle was to be made in "our composite granite and Roman travertin in cast * * * by an accurate method and process that guarantees uniform results, producing not an imitation, but an exceedingly durable and true substitute for real travertin and granite, without the slightest danger of flaking or disintegration."

The entire work was to be as per understanding, and to the entire satisfaction of the architect, for the sum of $167,000. This proposal was followed by other proposals upon revised estimates and by a new corporation, the Denivelle Hydraulic Composite Stone Company, succeeding to the business of the firm of Hammerstein & Denivelle. Bids were submitted by other contractors, who thereupon became competitors to do the work according to the specification calling for artificial travertin, without protest or objection from Hammerstein & Denivelle, or their successors in business, that the other bidders were proposing to use plaintiff's invention. Furthermore, the successful bidder was required to pay to each of the unsuccessful bidders the sum of $200 for the samples submitted with their bids. The bid of the Denivelle Hydraulic Composite Stone Company was accepted, because it was the lowest bid, and it thereupon paid to each of the other bidders the sum of $200 in accordance with the agreement in that behalf. The Denivelle bid resulted in a contract with the company in writing, dated March 5, 1909.

The contract recites that the Denivelle hydraulic Composite Stone Company, a corporation, is a subcontractor, and the George A. Fuller Company, a corporation, is the contractor; that the contract is for furnishing and installing all the imitation travertin and artificial stone required in the construction of the new Terminal Station then being erected on the site described in New York City for the Pennsylvania Tunnel & Terminal Railroad; that the contract is for the sum of $109,379, to be paid for in installments as the work progresses, the final payment to be made within 30 days after the contract is fulfilled, the contract to be completed in 8 months from its date; the subcontractor to furnish to the contractor a bond in the sum of $50,000 for the faithful performance of the contract; the subcontractor agreed to repair and make good any damage or fault in the building that might appear within one year after its completion as the result of imperfect or defective work done or furnished by the subcontractor. The bond was given and accepted by the general contractor, and the work proceeded.

The contract was completed in accordance with its terms, and on November 29, 1910, the Denivelle Hydraulic Composite Stone Company executed an acknowledgment that it had received from the contractor for the construction of the New York Station of the Pennsylvania Tunnel and Terminal Company the sum of $125,741.03, in full payment of all moneys due or to become due from the contractor under or in connection with the contract with the Denivelle Hydrau-

lic Composite Stone Company bearing date March 5, 1909. For the consideration stated, Denivelle Hydraulic Composite Stone Company released and discharged the contractor of and from all claims, liens, and demands of every kind and character arising or ·to arise out of or in connection with the· said contract, and also agreed to repair and make good any damage or fault in the said work that might thereafter appear within one year from the date of the release as a result of imperfection and defective workmanship and material furnished, and, in consideration of the additional payment of $3,-500, to be made by the said Pennsylvania Tunnel & Terminal Railroad Company at the ·expiration of such maintenance period, the said Denivelle Hydraulic Composite Stone Company, in addition to its maintenance bond then in effect, further stipulated and agreed that its Mr. Denivelle would personally look ·after such maintenance work, and would give his best advice and assistance in keeping the same in satisfactory condition during the period above· specified.

[2] In the former case the plaintiff Denivelle testified that the work on the Pennsylvania Station was ·experimental, that the idea was a new one, and that it was commenced in 1910 and finished in 1913. It was upon this· testimony of the plaintiff, unsupported by documentary or other evidence, that the decision of this court was rendered. Plainly there is now before the court a very different case, based upon uncontradicted documentary evidence. and oral testimony fixing dates accurately for the plaintiff's proposals, specifications, and the contract, its acceptance, the completion of the contract, and the ·release of the plaintiff. In these documents the character of the work is conclusively shown, from which it appears that it was a sale· for profit .made in competition with others upon specification, and that its experimental character, if such it was, was incidental, and not the substantial purpose of the transaction; that the work was· finished, found satisfactory by the architects, accepted, and paid for more than two years before the patent was applied for on October 20, 1915. In the .present case Denivelle, although testifying upon the trial, makes no statement that his work on the ·Pennsylvania Station was an experiment.

In the former case this court cited the case of Elizabeth v. Pavement Co., 97 U. S. 126, 24 .L. Ed. 1000, as stating the rule of "public use" as distinguished from· a "use by the public." applicable to. the facts before the court. ;.But. the question here is, not what constitutes a "public use," but what constitutes the act of placing the process and its product "on‾ sale" and selling the same for a profit, as distinguished from a transaction involving a use for· substantially experimental purposes. The evidence in the present case brings it clearly within the rule stated in Root v. Third Avenue Railroad, 146 U. S. 210, 220, 13 S. Ct. 100, 102, 36 L. Ed. 946, where the Supreme Court had before it the well-known cable car invention. The court quoted approvingly the opinion of the Circuit Court, stating that: " 'Manifestly the complainant received a consideration for devising and consenting to the use of an invention which was designed to be a complete, permanent structure, which was to cost a large sum of money, and which he knew would not meet the expectation of those who had employed him, unless it should prove to be in all respects a practically operative and reasonably durable one. If he had entertained any serious doubts of its adequacy for the purpose· for which it was intended, it would seem that he would not· have recommended it, in view of the considerable sum it was to cost. At all events, he did not treat it as an experimental thing, but allowed it to be appropriated as a complete and perfect invention, fit to be used practically, and just as it was, until it should wear out, or until it should demonstrate its own unsuitableness.' "

The court quotes also from Smith & Griggs Mfg. Co. v. Sprague, 123 U. S. 249, 256, 257, 8 S. Ct. 122, 126, 31 L. Ed. 141, where Mr. Justice Matthews, speaking for the court, said: "Where the use is mainly for the purposes of trade and profit, and the experiment is merely incidental .to that, the principal and not the incident must give character to the use. The thing implied as excepted out of the prohibition of the statute is a use which may be properly characterized as· substantially for purposes of experiment. Where· the substantial use is not for that purpose, but is otherwise public, and for more than two· years prior to the application, it comes within the prohibition." The decree of the Circuit Court in the Root Case, dismissing the bill, .was affirmed.

It .appears from the evidence that the plaintiff made application on August 2, 1913, for .a patent for improvement in process and apparatus for simulating stone, serial No. 782,671. This application was abandoned October 30, 1916.. There is an intimation by counsel for plaintiff that the application of October 20, 1915, was in continuation and substitution for the earlier appli-

cation of August 2, 1913, and that upon a question of public use the inventor is entitled to the earlier filing date. It will not be necessary to discuss the question whether the later application for a patent in the present case was a continuation of the first application. The latter, made August 2, 1913, would not be sufficient to exclude the work on the Pennsylvania Station completed November 29, 1910.

We conclude that the patent is invalid for the reason that, more than two years prior to plaintiff's application for the patent, he had placed the process and product of the invention on sale, and had sold both the process and product to the Pennsylvania Tunnel & Terminal Railroad Company for a profit.

The decision of the District Court is affirmed, with costs.